IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TOYOTA INDUSTRIAL EQUIPMENT MFG., INC., TOYOTA MATERIAL HANDLING NORTH AMERICA, INC. and THE RAYMOND CORPORATION, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. ) |
| DAVID K. LAND and LINDE MATERIAL HANDLING NORTH AMERICA CORPORATION, | ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
INJUNCTION, REPLEVIN, AND DAMAGES**

**The Parties, Jurisdiction, and Venue**

1. Plaintiff Toyota Industrial Equipment Mfg., Inc. ("TIEM") is an Indiana corporation and has its principal place of business in Bartholomew County, Indiana.

2. Plaintiff Toyota Material Handling North America, Inc. ("TMHNA") is an Indiana corporation and has its principal place of business in Bartholomew County, Indiana.

3. Plaintiff The Raymond Corporation ("Raymond") is a New York corporation and has its principal place of business in Chenango County, New York.

4. Defendant David K. Land ("Land") is a citizen of South Carolina.

5. Defendant Linde Material Handling North America Corporation ("Linde") is a South Carolina corporation with its principal place of business in Dorchester County, South Carolina.

6. Plaintiffs bring this action to enjoin Land and Linde from using or disclosing Plaintiffs' confidential business information and trade secrets and to compel Land and Linde to

return the confidential information and trade secrets Land took. Plaintiffs also seek damages to compensate them for costs caused by Land's conversion of confidential information and documents and misappropriation of trade secrets. TIEM further seeks damages to compensate it for Land's breaches of contract and fiduciary duty.

7. If Land and Linde are not enjoined from disclosing—and compelled to return—Plaintiffs' property, Plaintiffs will suffer substantial losses and be placed at a competitive disadvantage. The losses for each Plaintiff, though difficult to quantify, will greatly exceed $75,000 exclusive of interest and costs.

8. Count III of this Complaint arises the laws of the United States, namely the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Accordingly, this Court has original jurisdiction over that claim under 28 U.S.C. § 1331.

9. Because this action is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs, this Court has jurisdiction over the subject matter of the entire case under 28 U.S.C. § 1332.

10. This Court may exercise personal jurisdiction over Land because he formerly resided in Indiana and committed many of the acts described in this Complaint while present in Indiana.

11. This Court may exercise personal jurisdiction over Linde because it regularly conducts business in Indiana, has appointed a registered agent for service of process in Indiana, and intentionally directed activity to Indiana by recruiting Land as its director of design engineering.

12. Venue is proper in this Court because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in Bartholomew County, Indiana. 28 U.S.C. §

1391(b)(2). Bartholomew County is located within the Indianapolis Division of the judicial district for the Southern District of Indiana. 28 U.S.C. § 94(b)(1). Federal Jurisdiction is available under 18 U.S.C. 1030(g) and 28 U.S.C. 1331.

## Factual Background

13. TIEM and Raymond are leading manufacturers of lift trucks.

14. TIEM manufactures lift trucks at its facility in Columbus, Indiana, and Raymond manufactures lift trucks at its facilities in Greene, New York and Muscatine, Iowa.

15. TMHNA provides management services to support TIEM and Raymond.

16. The lift trucks manufactured by TIEM are designed by Toyota Industries Corporation ("TICO"), which grants TIEM the right to use the designs in the manufacture of the lift trucks. Raymond designs the lift trucks it manufactures.

17. TIEM and Raymond customize many of the designs to meet specific customers' needs.

18. Since 2002, Toyota-brand lift trucks have been the best-selling lift trucks in the United States. Likewise, Raymond is a leading manufacturer of electric lift trucks.

19. TIEM hired Land as a manager in its design engineering department in June 1998.

20. In that position, Land was responsible for the development, testing, and design maintenance of lift trucks manufactured by TIEM. Land was also responsible for providing engineering support to Toyota Material Handling, U.S.A., Inc.'s national accounts.

21. In January 2012, Land became TIEM's manager of quality assurance.

22. In that role, Land was responsible for overall product quality, parts inspection, testing, supplier development, and warranty administration for all products manufactured by TIEM.

23. TIEM promoted Land to senior manager of quality assurance in January 2014.

24. To perform his management roles for both design engineering and quality assurance, Land needed access to confidential information and documents belonging to TIEM and its affiliated companies, including TICO, Raymond, and Toyota Material Handling, U.S.A., Inc. ("TMHU").

25. TIEM and its affiliates granted Land access to a wide range of technical information, including design concepts, design analysis, drawings, product specifications, product design information, and testing protocols.

26. TIEM and its affiliates also granted Land access to warranty data, information about field campaigns, information about product performance, inspection data, and information about suppliers and customers.

27. As a manager, Land also had access to non-public financial reports, business plans, financial projections, and strategies.

28. Land knew throughout his employment with TIEM that the documents and information described in paragraphs 25–27 are the sole property of TIEM or its affiliates.

29. TIEM and affiliates restricts access to those documents and information to people who require access to perform their job functions.

30. The documents and information are stored on secure, password-protected computer servers, and documents are marked as confidential.

31. Land also attended TIEM's training in TIEM's Code of Conduct and acknowledged his attendance.

32. Section 6-2 of TIEM's Code of Conduct, which Land acknowledged receiving, provides that "[t]he Company's confidential information should not be disclosed to anyone outside the Company except with prior written approval under a non-disclosure agreement. . . . If you leave the Company, you must return all Company property, assets and confidential information." The documents that Land

misappropriated included copies of non-disclosure agreements between TIEM and certain third parties, and such agreements clearly state that such information is confidential.

33. An authentic copy of TIEM's Code of Conduct is attached to this Complaint as Exhibit 1.

34. Land entered into a Proprietary Information and Inventions Agreement (the "Agreement") with TIEM on June 15, 1998.

35. An authentic copy of the Agreement is attached to this Complaint as Exhibit 2.

36. In that Agreement, Land promised to hold in strict confidence all information he received about TIEM's processes, finances, and marketing and business plans. (Agreement ¶¶ 1–2.)

37. Land also assigned to TIEM all inventions, ideas, written works, conceptions, designs, innovations, discoveries, know-how, developments, improvements, systems, programs, and procedures he made during his employment with TIEM. (Agreement ¶ 3.)

38. Upon Land's resignation from TIEM, he was contractually obligated to return to TIEM "all Company property and all records and materials relating to the Company Business in my own or my agents' possession." (Agreement ¶ 8.)

39. On May 27, 2014, Land resigned his position at TIEM.

40. At the time Land resigned, he did not disclose to TIEM where he planned to work after leaving TIEM but specifically stated, when asked by TIEM management, that he was not going to work for a competitor.

41. In response to questions from TIEM personnel about his future plans, Land stated that he planned to work for a smaller company.

42. Because TIEM had no reason to suspect Land had accepted a position with a competitor, Land continued to have access to confidential information between the time he announced his resignation and his departure from TIEM on June 10, 2014.

43. At his going-away party at a local restaurant, Land disclosed to a TIEM employee that he would be working for Linde—a direct competitor of TIEM and Raymond.

44. Linde's corporate parent, Kion Group ("Kion"), recently announced its goal to overtake Toyota as the world's largest manufacturer of lift trucks by 2020.

45. An authentic copy of the article in which Kion announced that ambition is attached to this Complaint as Exhibit 3.

46. After Land's departure, TIEM only learned through sophisticated computer forensics that Land had copied numerous documents belonging to TIEM and its affiliated companies to a Google drive, which Land created using his Gmail account, dland007@gmail.com.

47. The Google drive includes a folder labeled "New Product Development." That folder contains more than 2,500 files related to the development of Toyota products, including design options, cost information, design analysis, assembly details, vendors, test plans, and schedules for new products.

48. The folder also contains more than 100 files specifically related to the development of products by Raymond.

49. TIEM and Raymond have invested millions of dollars in developing those new products, and the disclosure of that information to a competitor would cause irreparable harm.

50. Land's Google drive also includes a wide variety of technical documents, including information relating to TIEM's production plans, technical drawings of parts, design concepts, design analysis, and pictures of TIEM's products and floor plans.

51. The Google drive also contains a folder labeled "MyDKL\SC\Keep." The folder label presumably stands for "David K. Land," "South Carolina," and "Keep," showing Land's intention to retain such information for the long term.

52. The folder contains sensitive and confidential financial information about TMHNA, TIEM, and Raymond—documents that Land specifically acknowledged he was bound to hold in strict confidence.

53. Despite Land's pledge of confidentiality, Land copied documents into that folder throughout the month of May, including the days immediately preceding his announcement of his

intended departure, and such folder now holds them on a Google drive that is not under any Plaintiff's control.

54. Rather, the documents are within the control of Land and within the constructive control of his new employer, Linde.

55. Land cloaked his online activities by installing the computer program Proxy Switcher on his TIEM-issued computer.

56. ProxySwitcher is a program that allows users to browse Internet websites that may be blocked by an employer. The program also defeats any content monitoring done on a company Internet connection. Using programs of this sort allow a user to circumvent and Internet restrictions to websites, including file sharing, cloud storage, or other online file repositories that a company may block in order to prevent Internet transmission of intellectual property.

57. On his last day at TIEM, Land also used the computer program CCleaner, a freely available program that is designed to overwrite data, destroy evidence of user activities, and render deleted files unrecoverable. Any data and user activity information overwritten by the CCleaner program is unrecoverable.

58. In the month before Land's resignation, the copier near his desk recorded an increase of 2,000 copies over previous months.

59. Land began working at Linde as its director of engineering on June 23, 2014.

60. According to Land's own LinkedIn profile, Land is "[r]esponsible for the R&D activities in the North American market for all KION brands. Additionally, responsible for the oversight of the 'Linde' brand engineering business and activities, specifically the current product improvements, customer special requests, and new product development for the counter balance and warehouse products."

61. An authentic copy of Land's LinkedIn profile is attached to this Complaint as Exhibit 4.

7

62. According to statements Land made to TIEM employees shortly before his departure from TIEM, Linde plans to send Land to its design centers in China and Germany within the first weeks of his starting work as director of engineering.

### Count I: Temporary Restraining Order and Injunction

63. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

64. Land currently possesses confidential information and documents belonging to Plaintiffs.

65. It is undisputed that the information and documents Land took from TIEM are the exclusive property of TIEM or its affiliated companies. Accordingly, Plaintiffs have a likelihood of prevailing on their claims for relief.

66. Land's continuing possession of confidential information and documents, and his improper disclosure of that information and those documents to Linde, will inflict irreparable harm on Plaintiffs for which there is no adequate remedy at law.

67. Within the first weeks of his employment, Linde plans to send Land to its design centers in China and Germany.

68. If Land leaves the United States with confidential information and documents, it will be difficult or impossible for Plaintiffs to ensure the return or destruction of the information and documents.

69. Further, if Land reveals confidential information and documents to Linde, it will gain an unfair competitive advantage over Plaintiffs.

WHEREFORE, Plaintiffs ask this Court to enter a temporary restraining order and preliminary injunction requiring Land to return all information and documents belonging to Plaintiffs that he currently possess and prohibiting Land from taking any of the following actions: (a) disclosing to any third party, including, but not limited to, Linde, any information or documents that belong to Plaintiffs; (b) modifying, deleting, or in any way tampering with any information or documents that belong to Plaintiffs; (c) transmitting or taking copies any information or documents that belong to Plaintiffs out of the United States; (d) travelling outside the United States on Linde business until the Court determines that Land no longer possesses any of Plaintiffs' confidential information or document; and (e) working for Linde until

the Court determines that Land no longer possesses, controls, retains access to, or is capable of using any of Plaintiffs' confidential information or documents.

Plaintiffs also request that this Court enter a temporary restraining order and preliminary injunction requiring Linde to return all information and documents belonging to Plaintiffs that it currently possess and prohibiting it from taking any of the following actions: (a) using any information or documents that belong to Plaintiffs; (b) modifying, deleting, or in any way tampering with any information or documents that belong to Plaintiffs; (c) disclosing to any third party any information or documents that belong to Plaintiffs; (d) transmitting or taking copies of any information or documents that belong to Plaintiffs out of the United States; and (e) employing Land until the Court determines that Land no longer possesses, controls, retains access to, or is capable of using any of Plaintiffs' confidential information or document.

### Count II: Replevin

70. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

71. Land's unauthorized taking of Plaintiffs' confidential information and documents constitutes unlawful detention of personal property.

72. Linde is in constructive possession of Plaintiffs' confidential information through its employment of Land.

WHEREFORE, Plaintiffs request that this Court enter an Order directing the immediate delivery to TIEM of the confidential information and documents taken by Land.

### Count III: Computer Fraud and Abuse Act

73. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

74. Land intentionally accessed a protected computer without authorization, or exceeded his authorization, by copying files from TIEM's computer systems to his Google drive.

75. Land accessed a computer which is used in or affecting interstate commerce or communications ("Protected Computer").

76. Land intentionally accessed the Protected Computer without Plaintiffs' authorization or exceeding Plaintiffs' authorized access and obtained information from the Protected Computer ("Unauthorized Access").

77. Land's Unauthorized Access and related course of conduct caused Plaintiffs' damage in at least $5,000 in value.

78. Plaintiffs are entitled to both compensatory damages and injunctive relief.

79. Accordingly, Plaintiffs have a private right of action against Land under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

WHEREFORE, Plaintiffs request that this Court enter an injunction barring Land from disclosing any confidential information or documents he possesses and compelling him to return the confidential information and documents to TIEM, as well as award damages in an amount sufficient to fully and fairly compensate Plaintiffs' for Land's conduct.

### Count IV: Indiana Computer Trespass Act

80. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

81. Land person who intentionally accessed TIEM's computer system to copy files onto his Google drive without TIEM's consent the consent in violation of Indiana Code section 35-43-2-3.

82. Plaintiffs have been damaged by Lands' actions.

WHEREFORE, Plaintiffs request that this Court award them actual damages caused by Land's computer trespass, together with treble damages, attorneys' fees, and costs in accordance with Indiana Code section 34-24-3-1.

### Count V: Conversion

83. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

84. Land is knowingly exercising unauthorized control over Plaintiffs' confidential information and documents in violation of Indiana Code § 35-43-4-3.

85. Land's conversion is causing Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs request that this Court award them actual damages caused by Land's conversion, together with treble damages, attorneys' fees, and costs in accordance with Indiana Code section 34-24-3-1.

### Count VI: Misappropriation of Trade Secrets

86. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

87. The confidential information and documents to which Land had access at TIEM derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of the information and documents.

88. TIEM and its affiliated companies invest substantial resources into developing technical information, including design concepts, design analysis, drawings, product specifications, product cost information, and testing protocols.

89. TIEM and its affiliated companies also invest substantial resources collecting warranty data, information about field campaigns, information about product performance, inspection data, and information about TIEM's suppliers and customers.

90. The confidential information and documents have tremendous economic value to Plaintiffs because it helps them to build and improve their products and to develop products that meet customer demands.

91. A competitor who had access to the confidential information and documents would have an unfair competitive advantage.

92. TIEM exercised efforts, reasonable under the circumstances, to maintain the secrecy of the information and documents.

93. Those efforts included storing the information and documents on password-protected servers, limiting access to the information and documents to those employees who needed access to

perform their job functions, marking documents as confidential and requiring employees and suppliers to enter into confidentiality agreements.

94. By downloading and printing confidential information and documents, Land acquired trade secrets of another by improper means.

95. Land has, therefore, willfully and maliciously misappropriated trade secrets.

WHEREFORE, Plaintiffs request that this Court require Land to return Plaintiffs' trade secrets, enjoin Land from copying or disclosing any of TIEM's trade secrets, and award TIEM actual damages caused by Land's misappropriation of trade secrets, along with exemplary damages, attorneys' fees, and costs in accordance with Indiana Code sections 24-2-3-4 and -5.

### Count VII: Breach of Contract

96. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

97. The Agreement between TIEM and Land dated June 15, 1998, constitutes an enforceable contract.

98. Land breached the Agreement by failing to maintain in confidence TIEM's confidential information and documents and by failing to return and not maintain access to or control of the information and documents when his employment at TIEM ended.

99. TIEM has suffered damages as a result of Land's breaches.

100. TIEM performed all of its obligations under the Agreement, and all conditions to enforcement of the Agreement have been satisfied or waived.

WHEREFORE, TIEM requests that this Court enter judgment in its favor and against Land and award TIEM damages that will fully and fairly compensate it for Land's breaches of contract, together with the costs of this action.

### Count VIII: Breach of Fiduciary Duty

101. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

102. An employee owes his employer a fiduciary duty of loyalty.

103. Therefore, an employee must an employee must refrain from actively and directly competing with his employer and must preserve the confidentiality of information entrusted to him.

104. Land breached that duty by stealing TIEM's confidential information and trade secrets and copying the information and documents to a location he could access after joining Linde, a direct competitor of TIEM.

WHEREFORE, TIEM requests that this Court enter judgment in its favor and against Land and award TIEM damages that will fully and fairly compensate it for Land's breaches of fiduciary duty, together with the costs of this action.

FROST BROWN TODD LLC

By:  s/Darren A. Craig
James Dimos, #11178-49
Darren A. Craig, #25534-49
Michele Lorbieski Anderson, #28923-49
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
317-237-3800
FAX: 317-237-3900
jdimos@fbtlaw.com
dcraig@fbtlaw.com
manderson@fbtlaw.com

Attorney for Plaintiffs